UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ROBBY D. PEARSON,

Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,[1]

Defendant.

No. CV-12-00036-CI

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-motions for Summary Judgment. ECF No. 21, 27. Attorney Rebecca M. Coufal represents Robby D. Pearson (Plaintiff); Special Assistant United States Attorney Robert L. Van Saghi represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 20. After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to FED. R. CIV. P. 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

**JURISDICTION**

On June 25, 2008, Plaintiff filed a Title II application for a period of disability and disability insurance benefits along with a Title XVI application for supplemental security income. Tr. 20; 77. In both applications, Plaintiff alleged disability beginning November 5, 2006. Tr. 20; 153. Plaintiff reported that his ability to work was limited by postherpetic neuralgia from shingles. Tr. 157. He explained that the postherpetic neuralgia causes extreme pain over his skin that prevents him from bending, twisting, lifting, carrying things and sleeping. Tr. 157. Plaintiff's claim was denied initially and on reconsideration, and he requested a hearing before an administrative law judge (ALJ). Tr. 76-116. A hearing was held on October 8, 2009, at which vocational expert Sharon Walter, and Plaintiff, who was represented by counsel, testified. Tr. 35-75. ALJ Moira Ausems presided. Tr. 35. The ALJ denied benefits on March 4, 2010. Tr. 20-29. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 37 years old, had a high school diploma, and lived with his girlfriend and two rat terrier dogs. Tr. 49; 54; 227. Plaintiff has worked doing lawn maintenance, steel stamping, and auto repair, including interior and exterior work on RVs, motor homes and travel trailers. Tr. 38-40.

Plaintiff reported that in November, 2006, he was diagnosed with shingles. Tr. 42-43. He said that as a result of shingles, he constantly experiences a burning, stabbing sensation around his

abdomen, stomach and back. Tr. 42. Plaintiff said that the various medications he takes do not alleviate the pain or entirely prevent additional, painful bouts of shingles. Tr. 43.

Plaintiff testified that during the day he tries to walk around the yard with the dogs, read, watch some tv, and tries to do a little housework. Tr. 49-50. He testified that he has occasionally used, but does not have a problem with, marijuana and methamphetamine. Tr. 51. Plaintiff said he tried both drugs in the hopes they would decrease his pain. Tr. 51.

**ADMINISTRATIVE DECISION**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 5, 2006. Tr. 22. At step two, she found Plaintiff had the severe impairments of shingles with post-herpetic neuralgia; pain disorder associated with both psychological factors and general medical condition; anxiety disorder, not otherwise specified; cognitive disorder, not otherwise specified; personality disorder, not otherwise specified; and methamphetamine abuse. Tr. 22. At step three, the ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). Tr. 23. The ALJ found Plaintiff has the residual functional capacity ("RFC") to:

> [L]ift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of about six hours in an eight hour workday and sit for a total of about six hours in an eight hour workday. The claimant cannot climb ladders, ropes, or scaffolds, but can occasionally crouch and frequently climb ramps and stairs, balance, stoop, kneel and crawl. The claimant should avoid concentrated exposure to hazards such as machinery and heights. The claimant can perform lower semi-skilled

> work (i.e. SVP 3 or lower) and he should have no more than occasional contact with the general public.

Tr. 25.

In step four findings, the ALJ found Plaintiff's statements regarding pain and limitations were not credible to the extent they were inconsistent with the RFC findings. Tr. 26. Also, the ALJ found that Plaintiff is able to perform past relevant work as a stamp press operator. Tr. 28. Alternatively, the ALJ concluded that other jobs exist in significant numbers in the national economy that Plaintiff can perform, and identified representative occupations such as sorter of agricultural produce, cannery worker, and cafeteria attendant. Tr. 28-29.

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v.*

*Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**ISSUES**

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends that the ALJ erred by finding Plaintiff lacked credibility, and by failing to properly weigh the medical opinions and lay testimony evidence. ECF No. 24 at 7-16.

**DISCUSSION**

Plaintiff contends that the ALJ erred by finding his representations about the severity of his symptoms was not credible.[2] ECF No. 24 at 13-14. The ALJ gave four reasons that form the basis for the negative credibility finding. Tr. 26. First, the ALJ reasoned that if Plaintiff truly suffered from "intractable pain," he would be more willing to the endure side-effects of the medications he received. Tr. 26. Second, the ALJ found that Plaintiff's reported level of activities was inconsistent, and also inconsistent with his complaints of total disability. Tr. 26. Third, the ALJ relied upon Plaintiff's denial that he was depressed, which the ALJ asserted was inconsistent with his alleged intractable pain and symptoms. Tr. 26. Finally, the ALJ discredited Plaintiff's allegations related to the severity of his pain because

[2]Because this issue is dispositive, the court does not address Plaintiff's other contentions.

he withheld information regarding his history of substance use from his medical providers. Tr. 26.

The ALJ is responsible for determining credibility. See *Andrews*, 53 F.3d at 1043. The ALJ's findings, however, "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). An individual's statement as to pain and other symptoms "shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). Nor is an ALJ required to believe every allegation of disabling pain; otherwise, "disability benefits would be available for the asking." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The weight to give pain testimony is a difficult determination to make since "pain is a highly idiosyncratic phenomenon, varying according to the pain threshold and stamina of the individual victim." *Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986).

> Unlike most medical conditions capable of supporting a finding of disability, pain cannot be objectively verified or measured . . . the very existence of pain is a completely subjective phenomenon. So is the degree of pain: The amount of pain caused by a given physical impairment can vary greatly from individual to individual.

*Fair*, 885 F.2d at 601. The ALJ may not reject symptom testimony simply because it is not fully corroborated by objective medical findings. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). Where no evidence of malingering exists, and a claimant produces evidence that he suffers from an ailment that could reasonably be expected to cause pain, the ALJ can reject the claimant's testimony about the severity of his symptoms "only by offering specific, clear, and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). General

findings are not sufficient; "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

In determining the extent to which a claimant's pain affects his capacity to perform basic work activities, the ALJ will consider the claimant's statements about the intensity, persistence, and limiting effects of the pain, and will evaluate those statements in relation to the objective medical evidence and other evidence in reaching a conclusion as to whether the claimant is disabled. See 20 C.F.R. § 404.1529(c)(4). The ALJ may consider factors including inconsistencies in the claimant's testimony, the extent of the claimant's daily activities, any unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, or other ordinary methods of credibility determination. See *Bunnell*, 947 F.2d at 346.

In addition, the ALJ must consider the factors set out in SSR 88-13 and SSR 96-7p 21 in evaluating the credibility of subjective symptom testimony generally. *See Smolen*, 80 F.3d at 1284; *Bunnell*, 947 F.2d at 346. These factors include the claimant's work record, observations of treating or examining physicians and other third parties, precipitating and aggravating factors, and functional restrictions caused by the symptoms. See SSR 88-13; SSR 96-7p. In judging credibility, an ALJ may take into account the fact that a plaintiff is not taking prescription medicine to treat complaints of pain. See *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

**A. Side Effects**

The ALJ postulated that if Plaintiff was truly experiencing severe pain, he would be willing to endure side effects of the pain

medication. "While he seems to report side effects to every medication tried to control his pain, at the same time he is alleging intractable pain. If pain were that severe, some of those alleged side effects would be preferable to the pain. (See Ex. 12F/8.)" Tr. 26.

The ALJ's reasoning on this factor is not clear and the record cited does little to illuminate the reasoning. Page eight of Exhibit 1F is chart notes from a clinical visit on May 10, 2007, with Barbara Tritt, PA-C. Tr. 211. In that visit, Plaintiff's chief complaint was "post herpetic neuralgia." Tr. 211. The notes indicate Plaintiff spent 8-10 days per month in bed for most of the day, due to pain. Tr. 211. Plaintiff also indicated that while on Amitriptyline, he experienced "sleep-driving." Tr. 211. This side-effect appears to be the only side-effect mentioned in the ALJ's referenced exhibit. It is unreasonable to discount a Plaintiff's credibility because he preferred to avoid the danger of "sleep-driving" as a side effect.

The ALJ provided no additional cites to the record, and the record gives no indication that, despite the side effects, Plaintiff stopped taking his prescribed medication. Instead, Plaintiff testified that he tries to not take pain medication regularly because that medication is more effective if he is not taking it constantly:

> I really try not to take any pain medicine if I don't have to.
>
> ...
>
> I take all the pills at night but I try not to take the pain pills just because it. I don't know, it seems to – they don't work as well when I really need them, you know. Like if I'm taking them constantly and when I'm really, really in a lot pain and I go take it, it just

> doesn't seem to work they way they should, you know. So, I try not to take as many pain pills, if possible. I'm really trying to stick with my sleeping pill at night.

Tr. 47.

Moreover, the record reveals between June and November, 2007, Plaintiff tried various medications and reported the side effects that included migraine headaches, sexual dysfunction, increased pain, sleep walking, nausea and diarrhea. Tr. 206-09. It is unclear which of these significant side effects the ALJ believed Plaintiff should have been willing to tolerate, but regardless, the record contains no indication that Plaintiff stopped taking the medications despite the reported negative side effects. Tr. 204-09. Instead, the record establishes Plaintiff continued seeking effective pain medication. The ALJ's conclusion that Plaintiff lacked credibility because he sought different medication due to significant side effects is not a clear and convincing reason to discount Plaintiff's credibility.

**B. Activities of Daily Living**

Second, the ALJ also found that Plaintiff's reported level of activity was inconsistent with his complaints of total disability:

> Furthermore, the claimant's reported level of activity is not consistent and it is not consistent with complaints of total disability. The claimant reported that he is up and about six to eight hours per day, though the witness testified at the hearing he is in and out of bed all day.

Tr. 26. The ALJ does not provide a cite to support the statement attributed to Plaintiff. A single office visit on May 10, 2007, reveals Plaintiff told his provider that at that time, he spent eight to ten days per month in bed, and he was "up and about for about 6 - 8 hours daily on average days." Tr. 211. The Plaintiff's

assertion of an “average day” is significantly undercut by the estimation that he remains in bed all day for up to ten days per month. The ALJ may not single out one portion of Plaintiff’s statement, instead of examining the entire record, to support her conclusion. See *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)(ALJ not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"); *see also Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.").

At the hearing, Plaintiff testified that he gets up in the morning and lets the dogs out and tries to walk around the yard a little bit. Tr. 48. He reported he does a lot of reading, watches some television, and he tries to do the dishes but he cannot stand very long and make the necessary washing movements without pain. Tr. 49-50. Plaintiff also testified that during the day he typically rests for a couple hours at a time. Tr. 56-57. Plaintiff’s girlfriend testified that on an average day, he is “in and out of bed . . . most of the time.” Tr. 63. The testimony does not support the ALJ’s conclusion that Plaintiff is “up and about for 6 to 8 hours” on a consistent, daily basis.

Similarly, a majority of the medical records do not support the ALJ’s allegation that Plaintiff endorses he is regularly “up and about” for six to eight hours per day. As Plaintiff’s condition improved, he told his doctors that he experienced good days and bad days and occasional days were excruciating, but none of his days were good enough to allow him to do housework. Tr. 204; 213; 216; 218; 227. The ALJ’s contention that Plaintiff provided conflicting

evidence about his daily activity level, and the activities were inconsistent with his claim of total disability, is not supported by the record and does not constitute a clear and convincing reason to discount Plaintiff's credibility.

**C. Reported Depression**

Additionally, the ALJ relied upon Plaintiff's denial that he was depressed, which the ALJ asserted was contradicted by the symptoms he reported when he was evaluated: "[T]he claimant denied any depression though that is not consistent with alleged intractable pain or his reported symptoms when evaluated (See Ex 1F/10)." Tr. 26.

Again, the ALJ's reasoning is not clear. It appears the ALJ surmises that Plaintiff's reported pain and symptoms would certainly leave him suffering from depression. Tr. 26. The ALJ does not provide authority or a medical opinion to support that supposition.

Moreover, it appears the record contradicts the ALJ's assertion that Plaintiff consistently denied he was depressed. The medical record cited by the ALJ is from an examination on March 7, 2007, with Barbara Tritt, PA-C. Tr. 213-14. At that examination, Plaintiff stated his outbreak was improving, but he was having good and bad days and occasional excruciating days. Tr. 213. No notations appear about depression. Tr. 213-14. However, on May 10, 2007, Plaintiff reportedly denied "current depression," and the record revealed he was taking Amitriptyline, an antidepressant. Tr. 211. In an assessment conducted on November 30, 2007, Plaintiff admitted he felt "a little bit" depressed. Tr. 227. Also, during the hearing, the ALJ asked Plaintiff about anxiety and depression:

Q. Tell me, in 2009 there they started you, it looks

> like, on the Clonazepam, Doctor ... [Huago], the anxiety, I'm sure. You know any time you're experiencing chronic pain that could make someone very anxious, so is that what you associate with or is the anxiety something you've dealt with during your life.
>
> A. It's something I've kind of dealt with my all my life.
>
> Q. Okay. How about the depression. I noticed that you've been started too on the Wellbutrin?
>
> A. They actually gave me that to help my smoking and kind of my anxiety?\
>
> Q. Okay. So, before you were taking those meds were you on anything different for those anxiety and depression symptoms?
>
> A. No, not that I recall.
>
> Q. Okay.
>
> A. Actually, I was on Amitriptyline.

Tr. 47-48.

This exchange does not support the ALJ's allegation that the Plaintiff denied experiencing depression. The evidence in this case about whether Plaintiff denied depression is equivocal. More importantly, even if Plaintiff did deny he was depressed, it is not apparent that this is an appropriate reason to discount his credibility, as he was not claiming depression as a disabling impairment. Significantly, it is recognized in the Ninth Circuit that individuals suffering from depression often do not recognize that they are in fact depressed:

> It is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness. See, e.g., *Warren E. Leavy, Hidden Depression*, Chi. Trib., Feb. 1, 1996 at 7 (noting that nearly 17 million adult Americans suffer from depression in a given year and that two-thirds of them do not get treatment).

*Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). In sum, the citation supplied by the ALJ neither supports the allegation, nor does Plaintiff's testimony. In the absence of evidence or authority to support the ALJ's finding, the ALJ's findings related to Plaintiff's depression does not constitute a clear and convincing reason to discount Plaintiff's credibility.

**D. Withholding Substance Abuse**

Finally, the ALJ discredited Plaintiff's allegations of the severity of his pain because he withheld information regarding his history of substance abuse from his treating medical providers. Tr. 26. An ALJ may properly consider inconsistent statements regarding drug use as diminishing a claimant's credibility. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); see also *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ credibility findings properly considered claimant's inconsistent statements regarding substance use).

At the hearing, Plaintiff admitted he had smoked marijuana and used methamphetamine:

> Q:Mr. Pearson, in a Social Security determination of disability, any kind of alcohol or drug use is a relevant issue. Do you have any problems in that area?
>
> . . .
>
> A: I've used it a few times but I don't have a problem with it, no. I've smoked pot a few times. Actually, in the beginning it seemed like that seemed to help the pain more than the pain pills, but I completely quit smoking pot.
>
> . . .
>
> Q. And then how about the meth, when was the last time you did meth?
>
> A. Three months ago. Two and a half months ago.
>
> Q. And then before that, when was the last time?

A. It had been awhile, probably a couple of months.

Q. So what's the deal with that. Is it something that people bring around you or do you seek it out?

A. Somebody brought it to me. At the time I thought it would help my pain, but it really didn't.

Tr. 51. The record reveals Plaintiff reported to the Community Health Association of Spokane that he stopped using marijuana in 2005. Tr. 205; 211; 214. Plaintiff denied "substance abuse" during November 30, 2007, an exam with Brooke Sjostrom, M.S., LMHC. (Tr. 228). During a September 16, 2009, exam with Dennis R. Pollack, Ph.D., Plaintiff denied "ever having a drug or alcohol problem." Tr. 348. Lab tests revealed Plaintiff's sample was positive for amphetamine/methamphetamine on May 27, 2008, and on August 24, 2009. Tr. 319; 326.

The record does not establish when Plaintiff first tried methamphetamine as a pain reliever. The record does not reveal whether Plaintiff was using methamphetamine in 2007 when he was treated at the Community Health Association of Spokane, and examined by Brooke Sjostrom. Plaintiff admitted to his providers he had used marijuana in the past, but the record does not reveal when he again began using marijuana for pain relief. When asked at the hearing, Plaintiff acknowledged his use of the two substances and related that he did not have "a problem" with either substance. Tr. 51. Based on a careful review of this record, it is not clear that Plaintiff withheld information from his medical providers related to drug usage. Even if Plaintiff did withhold information about his drug use, the ALJ's credibility analysis is flawed, as discussed above, and requires remand.

Where one or more reasons supporting an adverse credibility

finding are invalid, the court determines whether the ALJ's reliance on such reasons was harmless error. See *Batson*, 359 F.3d at 1195-97. So long as there remains "substantial evidence supporting the ALJ's conclusions on . . . credibility" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," the error is deemed harmless and does not warrant reversal. *Id.* at 1197. In this case, the court cannot conclude that the ALJ's errors were harmless because the majority, if not all, of the reasons relied upon by the ALJ in discounting Plaintiff's credibility do not constitute clear and convincing reasons, and were not supported by the record. Under the facts of this case, the multiple errors cannot be deemed harmless.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. On remand, the ALJ shall reconsider Plaintiff's credibility and provide valid reasons supported by the record related to Plaintiff's credibility. Additionally, on remand the ALJ shall reconsider the medical opinions that were rejected in whole or part because the medical provider relied upon Plaintiff's improperly discredited self-reports. The decision is therefore **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED** and the matter is **REMANDED** to the Commissioner for additional proceedings.

2. Defendant's Motion for Summary Judgment, **ECF No. 27**, is **DENIED**;

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff, and the file shall be **CLOSED.**

DATED June 13, 2013.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE